Take up Gold Creek Condominium v. State Farm Take up Gold Creek Condominium-Phase I Association of Apar v. State Farm Fire and Casualty Company You may proceed, Mr. Cairns. Good morning. May it please the Court, my name is Ian Cairns. On behalf of the appellant, the Gold Creek Condominium Association, I'd like to reserve seven minutes for rebuttal, please. All right, what's your clock? Gold Creek asked this Court to reverse the District Court's summary judgment order, its order excluding the testimony of its expert, Keith Soltner, and the judgment based on those orders, and remand for a trial of Gold Creek's claims. The crux of this case is whether or not Gold Creek presented evidence which, viewed in the light most favorable to it, would allow a jury to find that some amount of damage, even if minute, occurred during the insurer's policy periods. And the answer to that question is yes, for two reasons. First, because the insurers themselves and their experts admitted and even stressed that such damage occurred. And second, because the testimony of the association's expert, which was erroneously excluded, explained that the damage in this case was continuous and progressive in nature and started before the insurer's policy periods and continued throughout them. Counsel, forgive me. You must be reading a different record than I do. As I understood it from your expert, he really couldn't say when the damage started. He didn't know exactly how it occurred. He didn't know when it started, when it stopped. He talked about construction issues. And as I understood it, let's start with State Farm. The district court found that there's just simply no evidence to show that the damage commenced during the policy period, which in State Farm's case I think was only like one year, years and years ago. Then you have the second portion of it, which is the bringing in the suit. That occurred over 32 years ago. Don't you fail on both elements with respect to the State Farm? We'll get to travelers in a minute. But with respect to State Farm, don't you fail on both of those? No, Your Honor. The district court, in proving that any amount of damage occurred during the policy period, the district court, nowhere to go back to your questions for the first argument, grappled with the testimony of the association's expert that the damage would have started at the latest in 1987, five years after the construction of Gold Creek, because that's when the water repellency of the gypsum sheathing. But with respect, again, and I copied some of this down because it's interesting. The district court went through the testimony of the expert. And again and again and again, he doesn't, he just doesn't know when things began, when they ended. And I'm just struggling with, I can give it to you exactly. The district court says, Salter testified he cannot look at rot and indicate how long it took for the rot to develop. He acknowledged that he cannot look at the deteriorated gypsum sheathing, plywood siding, or wood framing and develop an opinion as to how long it took to deteriorate. He testified that not every time water got behind the siding it caused damage. He acknowledged that there is no way to quantify how much water entered at any particular storm, and on and on and on. He just, sure, he's a nice man. Sure, he's a smart man. But he could not say that the damage ended or began during the policy period. In this case, one year. He couldn't say. I don't find anywhere in the record that ties it to that one-year period. What am I missing in the record? Point me to. I think what you're missing, Your Honor, is what's in the law. And the association. Not the law. These are facts we're talking about. Yes, but what the association was required to prove to trigger coverage under the insurer's policies was that any amount of damage, even if minute, occurred. And in Washington, the Washington Supreme Court has recognized that one way you can do that is show that there's a continuous process of damage that started before the insurer's policies, continued through them, or even beyond, as in this case. And that process of damage will trigger coverage under every policy while it is ongoing. That's in the Vielle case. And I understand that those cases are in the context of third-party insurance. Is that right? And this is the first. The Washington State Supreme Court has not really addressed it in the context of first-party insurance. The Vielle case was a first-party insurance case. And there was also the – and so it has addressed it in the first-party insurance case. And as we – were you going to ask? Let me ask a question about that. Vielle was first-party. Yes. And it did talk about Gruhl and the third-party cases and seemed to say that – seemed to think they were applicable. But it also found no liability in the case on a different basis. I'm interested. Both sides tell me what you think about whether this court should certify issues in the case to the Washington Supreme Court. Yes. I thought that that question might be asked. What I would say is, you know, to the extent that this court thinks that it's necessary, you know, to get insight, of course you should certify it. But I don't think it would be – you know, if you certify that question, you're going to get the same statements you got in Vielle and Bionel Trucking, which is that when there is a continuous and ongoing process of damage, all policies in effect during that continuous damage are triggered and they all provide full coverage for the occurrence or loss. And what is the extent of the injury during – I mean, how do you – what is the extent of the injury that has to be found during each of these policy periods? Well, so I would – there are two really things going on when courts talk about a continuous damage or a continuous trigger theory. The first is very simple and is did any amount of damage occur? That's all you have to show to show that a policy has been triggered and provides some amount of coverage. And here, as I said, there's evidence of that. And the second thing is the scope of coverage once you find that a policy has been triggered. And that's the joint and several liability issue that courts have – some courts disagree with, you know, have come to different results than the Washington Supreme Court. The Washington Supreme Court has said that insurers are jointly and severally liable for all damage that occurs in a continuous process. Counsel, let me – I'm inclined to agree with you. I don't think we need to certify the Washington Supreme Court under any of the three. I don't find any evidence showing that it gets triggered. But let's just say for arguendo that one of them does trigger it. What about the one-year filing requirement? You didn't do that, did you? Well, then I would point, Your Honor, to the Panorama Village case from the Washington Supreme Court. And what the court said in that case is that where a suit limitations clause, such as State Farms here, requires an insurer to bring suit after something occurs, then that doesn't mean during, okay? It doesn't mean what? During. Something – if you require – During, but it has to be within one year after the beginning occurs. And what Panorama Village held was that in cases where what's at issue is continuous  until either that hidden or progressive damage ends or is exposed to view. Because the occurrence – that is when the occurrence ends. Or here the occurrence causing loss ends is when it was exposed to view in 2018. And that's – the association brought suit within a year of that. So, yeah. So your argument is that, I guess, under any of the three possible triggering mechanisms under Washington law, there's evidence in the record that shows that it has been satisfied and you think that Washington law basically obviates the operation of the one-year filing requirement. Is that your position? I don't think it obviates it. I think what the Supreme Court said, the Washington Supreme Court said in Panorama Village, is if you want the result that State Farmers argued for here, then you include an after-inception clause in your policy, which specifically requires the insured to bring suit at the beginning of damage. I read Panorama quite differently. I think it's very distinguishable. As far as you're concerned, it's on all fours and it controls here. Is that right? Yes, Your Honor. Okay. Let me double back just a minute to the earlier question about the evidence in the record. And my specific question is whether you cited this in the summary judgment papers. I didn't go back and long brief, and it's harder to find in there. I assume it's you. Somebody's asking the questions at the deposition of State Farms' own guys. Yes. And he says, yeah, this started near the outset and increased every year. Yes. And this is in the 5 ER 1186-87. You've cited it, and I've gone back and read all of that. Did you cite that in the summary judgment briefing in the district court? Yes, Your Honor. I have it right here. Now, there was no preservation argument made by appellees here, so we did not include it in the ERs. But I can give you the docket. It's docket 70 at pages 2 and 7 and docket 76 at pages 2 and 10. And those were where we argued that this evidence from State Farms' expert should have precluded summary judgment. And so, I mean – So you're relying upon State Farms' expert, not upon your expert. Well, Your Honor, as I said in my opening remarks, there are two ways in which summary judgment should have been precluded. It was through their testimony of their experts and their own statements in their denial letters and our own expert. And I guess the – let's bring it back to the continuous damage and the nature here. You know, the analogy I would make is, you know, the district court faulted the association because it could not point to a specific piece of damage and say, hey, this occurred in April 4, 1989, okay? But what the cases make clear is that when the damage is continuous and progressive in nature, that you don't have to do that. This kind of damage where it slowly accumulates over time defies that type of – But don't you have to have evidence that says that, in this case, the rain caused it? What I read from the record is that faulty construction, failure to inspect, all kinds of other things that could have caused it rather than particular type of rainstorms. Don't you have to show that the rain was the cause? Yes. And, again, both our expert and their statements. I would direct this court to the testimony from Mr. Peralt, state farms expert, that acknowledged that this damage was a result of rain getting into the exterior walls at Gold Creek. Look at the insurer's denial letters where they acknowledge that this damage was caused by repeated rainwater intrusion. They've never really honestly disputed that. So, you know, they say there's no evidence of continuous damage. But if you look at their denial letters, they go on and on. They try to argue that the loss here is not fortuitous because it rained so much in the northwest. Am I understanding you correctly? You're saying, well, our expert and our side may not have provided the evidence necessary to meet the requirement here, but their side provided it for us? It's both, Your Honor. Their denial letters is the evidence we're relying upon to show that the damage was caused by rain and it's covered for the policy period. Is that your position? Our position is that both separate and independent grounds for reversing the district court's summary judgment, Your Honor, both because their own evidence showed that continuous damage, any amount of damage occurred during their policies, and because our expert, who was erroneously excluded, his testimony was also sufficient for a jury to find that any amount of damage, even if minute, occurred during the insurer's policies. I want to double back for a minute to an issue we're talking about, the allocation of the damage and whether everybody's on the hook for all of it. And this goes to the certification question and so forth. So I'm with you when, I mean, their own guy says it started early and it increased every year, and rain did it. So, look, all that makes sense. I understand in a third-party liability situation, so you've got liability coverage, and the plaintiff brings a lawsuit for pollution coverage or any of these continuing kind of things, and my understanding of tort law could be wrong, and that's why I'm asking the question. My understanding of tort law is if you can allocate that among which of the tortfeasors caused what damage, then you allocate it. But if you can't figure out which of multiple tortfeasors caused the plaintiff's loss, they're all on the hook, joint and several, because it makes more sense to hold the tortfeasors responsible than to have the plaintiff, the victim, suffer the loss. But that's different for first party. There are no tortfeasors here. We're not talking about State Farm as a tortfeasor or travelers. It's property insurance. And what you're asking is to say, okay, State Farm had one year, and there's some incremental damage in that one year, and now State Farm that took a premium to cover one year is on the hook for damage that occurred over 40 years. It seems to me a lot different, and I understand Villareal may be saying it wrong. I often do. Seems to treat it as the same for first and third, but it does seem to me that certainly a court could think those things are different, and there's really no holding of the Washington Supreme Court applying this principle in a first party situation. What part of that analysis is wrong? I have two responses, Your Honor. First, which, again, to distinguish between whether or not any amount of damage occurred to trigger policy, even if you agree that joint symbol liability is inappropriate in a first party context, the insurers would still be liable for the portion of the incremental damage that occurred during the policies. So how do you prove that? I'm just wondering how can you in this kind of case with progressive hidden damage, how do you show what part of the damage occurred during any one policy? Well, that is the answer to the second question that Judge Hinkle asked, which is that is why they don't require allocation when the type of damages at issue here really defies that type of allocation. You don't know. That's the problem that we don't really, the Washington Supreme Court has not really spoken to, whether it would require proof of damage occurring during that year or just take the cumulative loss and divide it among all the insurers. I think it did speak to this issue in the B&L trucking case is where I would point this court. That's a third party case too, right? Yes, but if you look at the analysis, it applies equally to first and third party insurance cases, which is that the burden of drafting the policy and requiring some sort of pro rata allocation or however else you want to do it, the burden of saying that's what we're going to do, that's on the insurers that draft these policies. And they didn't do that here. There's no language in their policy saying that if damage is continuous and progressive in nature, we're only going to pay for the part of it that occurred during our policy periods. They didn't do that. Instead, they provided broad coverage for all risks occurring during their policies. Doesn't it say loss during the policy period? Surely it does. Again, that's what's responsible. That is the triggering. That goes to whether or not there's trigger. And, again, if you look at the B&L trucking case, they say that which involved very similar language, I think actually identical, it said you're still on the hook for the entire loss. Because even when your policy says, you know, it's going to be triggered by loss or damage occurring during the policy period. So I've gone way over my initial estimate, so I'll reserve the remainder. Good morning, Your Honor. Your Honor, Theodore Boutrous for State Farm. This is a very simple case. There's no reason to certify this to the Washington Supreme Court. As Judge Hinkle was pointing out, the only language about continuous exposure and continuing injury type language is the definition of occurrence in Section 2 of the State Farm policy, which is the third part of the State Farm policy. There's no definition of occurrence in the first part of the policy, which is what is at issue here. Doesn't the policy say that those definitions apply each time the word appears in the policy? It makes very clear that the definition as to occurrence only applies to the Section 2 section, Your Honor. And where does it say that? Let me find you the exact page. But it's very clear, Your Honor, that that definition does not apply to the section. I'll get you the exact page. My note has page 22 is where it says that it applies each time the word's used in the policy. But then it limits the definition specifically to Section 2. I'll get you the page. I'll go back and double-check. Thank you, Your Honor. Because the point I want to make here is, first, as the district court said, let me talk about the one-year suit limitation provision. This couldn't be clearer. The policy was a one-year policy, and it provides that a suit must be filed within one year after the occurrence causing loss or damage. Based on dictionary definitions, the Washington Supreme Court in 1956 in the Truck Exchange case said that the word occurrence is unambiguous and clear, and it means event or incident. And then, as Your Honor was pointing out, the policy explicitly says it only applies to loss during the policy period. Miss, your opposing counsel refers to the Panorama case and says that that decides the one-year argument. What's your response to that? Two things, Your Honor. First, it is easily distinguishable. First, it is triggered. The one year there was triggered within one year after a loss occurs. Then that policy involved a very specific type of loss, collapse of a building caused by a hidden defect. And so the court there interpreted the loss to be either the collapse or the unveiling, the revealing of the hidden defect. Here, our policy is triggered by the occurrence causing the loss or damage within the policy period. So in other words, it's the triggering mechanism as opposed to the result of what happened. Exactly. And here, the occurrences, and I think it's really interesting. When I went back and looked at Mr. Soltner's testimony, he identified the events. He did identify rainstorms pursuant to a very shaky methodology, but he did find about 30 what he called storm events and rain events during the policy period. Those are occurrences. And in the Washington Supreme Court, I said event is an occurrence. So to meet the one year limitation period, they would have had to file within one year of those occurrences, which would have been by October 1991. They didn't do that. Part of the problem is there's nothing in the policy that defines an occurrence as something that happens only during the one year. It's, in fact, I want to ask you a hypothetical that kind of relates to that. Suppose there's just one rainstorm event. So there's a terrific storm. And it's during State Farm's year. And then, but nobody discovers that it's gotten in the walls and now it's molding and may not mold up here, but it surely does where I'm from, and that's what happens. So the rainstorm is during State Farm's year. Two years later, people figure it out. Just one storm. And at that point, it's during traveler's coverage. But the only damage is during, the only occurrence is during State Farm's year. Who's on the hook for that? That would not be State Farm because there's no discovery provision built into the one year limitation period. So nobody. So these people have insured against this very peril every year. They paid the premiums. The insurers took the money. The event occurred. The peril came in. And the plaintiff's out of luck because nobody's got it. Not necessarily, Your Honor. We'd be pinned if a manifestation trigger rule was applied. But the court doesn't need to reach those issues here. And the panorama decision talks about this. But under your interpretation, and Washington's pretty clearly not adopted the manifestation theory, but under your reading of the policy, nobody pays for that because the only occurrence was during State Farm's year. That's when the damage occurred. They find out about it two years later, and they're just out of luck. Not necessarily, Your Honor. I don't want to speculate about what other, it would depend on the policy language of the other policies. This very language. Under our policy. And theirs. Under theirs, it wouldn't, one, there's no evidence of any injury during any of the policy periods. Every time I ask a hypothetical, the lawyer says bad hypothetical or those aren't our facts. I get that answer. But let's take my facts. Here's the hypothetical. One occurrence. It's during State Farm's year. There's no way to know about it until two years later when Travelers has this very policy. And I think under the position the defendants have taken in the case, nobody pays for that. I don't think that's our position. This is very policy language driven, and I don't want Mr. Ackerman to discuss Travelers' policy. But under our policy, and Washington's very clear, you look at the policy as drafted. The courts don't rewrite it and reassess risks. You get premiums based on the nature of the policy. Here, the language is absolutely clear. The injury must, or the loss must occur during the policy period. There's no discovery rule. And the Panorama decision on this point is very clear. It noted that there was an employee dishonesty provision that did say within one year the discovery of the loss. And the court in Panorama said the fact that the policy included the discovery provision in one section but not in the property loss provision was dispositive because it would ignore the plain text. There's no discovery rule here. Mr. Boutrous, let me ask you. My perspective on your opponent's position is that there's evidence either from the evidence that should have been included from their expert or State Farm's own admissions. What is your best response to that? To me, it's a failure of proof. There's no proof that it occurred during the policy period and the Panorama case doesn't trigger it. So why would that position be supportable given your opponent's argument that, if nothing else, you all agreed that this damage occurred during the policy period? It's absurd, Your Honor. First of all, to Judge Hinkle's point, this wasn't a legal argument in the summary judgment motions. They noted in their introduction of their summary judgment opposition in papers that the experts on both sides agreed that there was a progressive, that things happened every year. But the experts for State Farm and Travelers never testified that this occurred during the policy period. They weren't qualified under Rule 702. They were not proffered to testify as to when the damage occurred. They testified that it was bad construction, all these other reasons. But they never said when it occurred. They would have had... To the contrary, I've got the quotation right here in front of me. And they did say, more likely than more probable than not, this exposure started early and continued every year. And that's what your guy said. Exposure, Your Honor, is different than damage. That's the whole point, that Mr. Soltner said, yes, there was rain every year. Deterioration and gypsum sheathing, you don't think that's damage? Well, Your Honor, again, these experts were not proffered to testify about when the damage occurred. Well, they've got language contrary to that. But let me ask you this. Take 7202 out of the book. Why isn't this admissible under 801D2D as a statement by an agent of a party opponent? Well, number one, Your Honor, it's not factual testimony. Number two, it doesn't – I challenge my opponent to find in the record where any expert said that any damage occurred during the one-year period that State Farms policy covered this gold creek. There's no evidence. So is it your position that neither your opponent nor anybody on State Farms' side introduced admissible evidence? It was introduced admissibly that showed that the damage occurred during the policy period. Is that correct? That's correct. And, in fact, Mr. Soltner – Where's the question? Oh, go ahead. I'm sorry. You go ahead. I was just going to say, to your point on the admission point, their expert admitted that there was no way of determining when damage occurred. Water went in. Contemporary judgment. So if there's evidence that supports them, that's what they need. Here's the question. Would you expect that each year that there's water or during each rainy season since original construction, there's going to be some damage occurring in the exterior walls at Gold Creek? Answer, well, yeah. I mean, you probably get some staining and you get some advancing deterioration, some advancing deterioration, gypsum sheathing that occurred in prior years. Certainly more probable than not, in my mind, concerning the exposure that this building has. Well, Your Honor, but there was no evidence of when the damage started, and their own expert said he could not determine when it started. Your guy just, in the quote I just gave you, said since construction. But, Your Honor, again – You just want us to disbelieve that. Your guy didn't know what he was talking about, and he was wrong. Your Honor, if Rule 702 required the plaintiff's expert to be qualified and show reliable methodology and meet the standards of Rule 702, then an expert on the other side would have to be qualified. Yes, but he wasn't proffered as an expert. He was proffered as someone most knowledgeable, right? Then he doesn't . . . you can offer lay opinion testimony. Mr. Swanson was proffered as an expert. He's an architect. He really wasn't a meteorologist. No, I'm not talking about the Daubert issue. I'm talking about evidence in the record that I think Judge Hinkle is pointing to that is an omission that, in fact, ever since construction, because of these annual wind-driven rainstorms in the particular location where this condominium was built, that there's going to be damage. And it's an omission. Well, Your Honor, I don't think that's an accurate depiction of what these experts testified to. They, A, were not testifying about when the damage occurred. They vaguely testified that, yes, there could be continued deterioration. But there was no testimony about . . . I mean, their expert, Mr. Solner, said there's no deterrent when the rain started to become a loss or damage to the building. So let's just get him out of the picture. So he's done. Let's get what your admissions are. It's clear what I was reading was your guy's testimony. I know, Your Honor, but our guy was not qualified to testify to that. You didn't answer my 801D2D question. Why isn't that a statement above a party opponent? Because there's no foundation, Your Honor, for it. There's no demonstration that he had . . . Subject to your own witnesses. We didn't have a chance to because they never made this argument below that our evidence . . . it's pretty desperate, I'm just going to say it, to say our expert was excluded . . . And so you know what's the problem with that? It's just, to me, intuitive. In fact, in discussing this with my law clerk, we're looking at the conditions, we're looking at where it's located, we are looking at what weather events, and I'm thinking, why do they need an expert at all? Just live there, and you're going to know. This happens, this is damage, and you're . . . You know, State Farms is a pretty smart, big insurer, and they have to know about all these risks of exposure. What else did it? Bad construction, Your Honor, bad building, ignoring the loss, ignoring the situation by Gold Creek. But let me just say this, going back to that, on the question of whether it happened, let's assume it did. Let's assume there was rain damage. They had to file suit within one year that the occurrence, the rainstorms that Mr. Soltner himself said were events that occurred during 1989 and 1990, they didn't do that. And that means that the case was properly dismissed on summary judgment. Judge Hinkle, did I interrupt you? No. And so I would go back to the fact, though, that . . . If I can just summarize. Mr. Soltner testified that, yes, there was rain, there was water. Water stains weren't enough to determine whether the damage had started to occur. It could take time for the damage to occur. And there was no way of determining when the water first caused harm and damage to the property. That means there's no evidence that anything happened during the State Farm policy period. That's the second ground for granting summary judgment and the Court should affirm. Thank you very much. Thank you. Mr. Berger. Good morning, and may it please the Court. Winston Ackerman for the Traveler's Appellees. I'd like to start with a question that Judge Wardlaw asked that I don't think Appellant's Counsel answered quite right, and that is what is the extent of injury that's required here under these policies? So there is a deductible, and it's a per-occurrence deductible, and under the Traveler's Policy, that's $1,000 per occurrence or $2,500 depending on which of the years. So here they would have to prove not just that some little tiny bit of rain got in. They'd have to prove that there was a storm where enough rain got in that you'd have to do that amount of repairs, you know, as of back in that time. Do I understand correctly that under Washington law that that is a requirement, that you have to, number one, show the covered damage and that the deductible amount has been exceeded before you have coverage? Is that right? Yes, that's expressly what these policies provide. The case that best exemplifies that, if you know. I don't have the deductible case, but I'll see if I can find it quickly here. I remember seeing it somewhere in the paperwork, but I don't remember right off the top of my head. But is that true under the Continuous Trigger Theory? I mean, the Continuous Trigger… Where do you look at cumulative loss? So I understand that that may be true under other theories of what triggers damages, but is that true? Do you have a case for that being true under the Continuous Trigger Theory? I don't have that case. Is there any such case? Under the Continuous Trigger Theory, that's almost always applied in the liability insurance context. Well, you're right. And that's a different… You're right. That's why I'm troubled by this issue in the first party context and under these circumstances. You know, what would Washington do? And would it… That's even part of my question. Would it even apply to deductible if, under the Continuous Trigger Theory, you ultimately look at just cumulative damage when it becomes evident, which is what happened in this case? That's the question I have. Yeah, so I think… I mean, when you're talking about continuous trigger in the liability insurance context, the limits and the deductibles work very differently. Right. Because you're talking about what's the exposure to the insured for a whole series of claims, and that may arise out of the same stuff. And like Judge Smith, I spent 16 years of my life doing insurance defense work, so I know that. In the property insurance context, if you have two hailstorms, that's two separate limits, two separate deductibles, two fires, same kind of thing. It doesn't typically cover something that goes on and on and on. And that's talked about in the Mercer Place decision, the Washington Court of Appeals decision in that, which is a property insurance case. And they say, you know, these policies, when you read them as a whole, they don't cover continuous or repeated seepage. They don't cover faulty construction. They don't cover things like that. So which insurance company would be on the hook when they say they found this extensive damage in 2018? Which insurance company? So it depends on whether you apply a manifestation trigger or an injury-in-fact trigger, or, you know, the continuous trigger. We disagree that that applies at all in property insurance. But if you apply the manifestation trigger, and that's the California Supreme Court's decision in prudential LMI, and there's a Washington Supreme Court decision called Hillhaven Properties from 1997 that discusses that opinion in a lot of detail. It ultimately, it's dicta because ultimately it says it doesn't matter. We don't have to decide that issue. But it seems to agree with that analysis. I mean, they discuss it without any comment saying it's incorrect. So if that's the rule, then it's the company that's on the risk in 2018. That means you have to choose between trigger theories. I don't think you do if you conclude that they have no evidence that could put, no admissible evidence that could put this damage into either State Farms or Travelers Policy periods. And on that, I think what's important to recognize is it's not quite as obvious as you might think when you look at the facts in detail. So these are tiny little holes. When you read what Soltner says, it's like a sixteenth of an inch is where this water is coming in. That's an excerpt of record, page 34. And there's an overhang above, like part of the roof that's hanging above. So you can only get water in. It's not going to happen every time it rains. You have to have, you know, a heavy rain. You have to have wind pushing the water, and it's got to get in through a little tiny hole. And they don't know how long that might take. You really can't say, is that five years? Is that 10 years? Is it 15 years? We know what it looked like in 2018, but it's a 40-year period, and we don't know when in that 40-year period it happened. But I've quoted State Farms guy, and your guy was similar. This started early and increased constantly. I think what they said when you read it carefully is the water— A sixteenth of an inch is a huge hole in a building when you get rain like this. I mean, I— Well, and the other thing, it was—I mean, they had some sealant there that they had to break through, and the coating, and that would take years as well. And even, you know, Saltner couldn't say when he was pressed, is it five years? Is it 10 years? He was guessing a lot on that as well, and it could be more. But I think what's important there is they do say that water would get in, but they don't say when does it rise to the level of damage. When do you have to replace it? And the stuff behind where the water comes in, that's designed to take some water too. It's designed to dry out, designed to get a little bit wet. So it really requires— Can I switch over or kind of switch back, actually, to the deductibility issue? Are you aware of any Washington Supreme Court or appellate case law where the court has ignored the deductibility limit in determining what the policy says? I'm not aware of anywhere they've ignored the deductible. And Panorama doesn't change that in any way, right? I don't believe Panorama speaks to the deductible at all. So let me ask you this way. Suppose there's 20 years, and Travelers has coverage the whole time, and you've got coverage for Brainstorm, and we know that the building is in very bad shape at the end of the 20 years, and we know somewhere in the 20 years this all happened, all covered peril, but you've got 21-year policies and nobody knows which year. You're off the hook entirely because nobody can show that during any one policy year the loss in that year exceeded the deductible. That seems to be the effect of your analysis, and that can't be right. No, Your Honor. If we were on the risk for 20 years and we know it happened during that 20 years, then we would be on the risk. You would look to exclusions and things like that. Suppose now it's 20 different carriers and they've all got exactly the same policy. Now they're all free and clear, right? Because nobody knows which year the damage exceeded. And the expert says it started in the first year and it went on damage every year. But nobody knows which year the specific damage exceeded the deductible. They're off the hook. True? They would be fighting among themselves certainly as to the injury in fact rule. No, if I understand your theory, they wouldn't be fighting among themselves. They would all walk out of there free and clear because there would not be any single policy where you can prove that the damage exceeded the deductible. They're all off the hook. Isn't that the effect of your argument? I think that's correct under an injury in fact rule. But I think with better expert testimony they could prove it. I don't know that it's impossible. But there are certainly Footnote 6 of our brief cites to some expert analysis. Better expert testimony might get them more specifically. What you seem clearly not to do in Footnote 6 was to say, and if this case goes back for trial and they come up with that expert testimony, we won't challenge it. We agree that that's a good methodology. You didn't say that, did you? No, and that would be too late. You want to say that now if the case goes back and they wind up in trial, you agree that the methodology you cited in Footnote 6 meets the requirements of Daubert? No, I mean it wasn't developed. It's just a suggestion that there is literature out there that might lead them to something that would actually be scientific as opposed to the guesswork that we have here. I wanted to ask you a question about commences. Unlike state farms policy, yours says loss or damage commencing during the policy period. Correct. So here's my question. The water comes in and it damages a door in 1990. The facts, it's not a good hypothetical, I admit it. But the water damages a door in 1990. It's before your policy period. And then during your policy period in 1992, it damages a window. Different parts. When does the damage to the window commence? Some loss damage, 1990 it's the door. Window, 1992. When does the damage commence? I mean, those are separate events. I would say the window damage is unrelated and that commences in 1992. So why isn't that the case here? You've got a whole building and some parts of the wall and the interior are damaged one year and some parts are damaged another year. Some parts are damaged yet another year. So why doesn't this loss commence, the loss to any particular part of the building, commences when that part of the building is damaged? Isn't that the same thing? I think that could be true, Your Honor, but they would have to prove that. And that's the reality when you look at the photographs. There are areas where it's not damaged. I mean, they would say just stained. There are other areas where it's damaged. But they would have to prove when that happened in order for it to be separate, distinct events. Fair enough. Beyond my time, unless there are further questions. Okay. Thank you, counsel. Counsel. Thank you, Your Honors. Having to go to the first party versus third party liability issue, having considered it more, I mean, just to clarify my answer, of course, to the extent this Court thinks it's necessary to get guidance and input from the Washington Supreme Court, it should do so as appropriate. But I would also point this Court. Well, it would be gained by that in this case. I mean, as an intellectual exercise, I'm sure it's interesting. But do we need guidance of the Washington Supreme Court? They've got three different theories. From my perspective, it doesn't matter which one we apply. This is a proof case. And either my colleague using his good experience in Florida is saying, well, maybe there is. Or there isn't. But it doesn't matter which of the triggering events is there. Why do you think there would be any benefit in sending these cases to the Washington Supreme Court? Well, Your Honors seemed concerned about whether or not the joint and several liability portion of the continuous trigger rule would apply in this case. And so that could be a question that was certified to the Washington Supreme Court. But that would be the only question? Not which of the three would apply here, but just that one question? Well, I mean, I would reiterate that we think Washington law is clear. The continuous trigger is the rule of joint and several liability. And all you have to prove is some amount of damage occurred during a policy to trigger that policy. And the scope. That's your theory? Yes. You don't need anything from the Washington Supreme Court, right? Yes. Because we think it's clear. And in addition to the cases I cited you in my opening remarks, I'd also point this Court. So in a third-party context, and I'm looking at the American National Fire case, and it says in Villela, we address the effect of continuing property damage on the triggering of insurance policies. In that case, we quoted 48 installations which stated, when courts are dealing with property damage situations where damages slowly accumulate, courts have generally applied the exposure theory so long as there is tangible damage, even if minute. Which is why that's the line that tells me, at least, that there's not a deductible issue in this context. And that's why I'm confused about how, if we put this in the first-party context, whether or not would the Washington Supreme Court, again, say damage no matter how minute? And so that would mean the deductible would not be a requirement. Or could it be that they have to at least prove damage during that period? And this really is a failure of proof because your expert didn't qualify, and therefore you can't prove any damage during this period, no matter how minute. Yeah, but I mean, here as a practical matter, the occurrence, the damage would be treated as a single occurrence, which more than exceeds the $1,000 deductible. I mean, the cost estimates to repair are in the millions. It's over $8 million. So as a practical matter, I don't think it would matter in this case. Unless your honors have any more questions, I see I'm out of time. So, thank you. Okay, thank you, counsel. Gold Creek condominium versus state farm firing casualty will be submitted, and this session of the court is adjourned for today. All rise.
judges: WARDLAW, SMITH, UNKNOWN